UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF ILLINOIS

---

IN RE:       DAVID AND TERRI DELP,                    Case No 08-31466

             Debtors.                                 Chapter 13

---

**ORDER SUSTAINING TRUSTEE'S OBJECTION
TO CONFIRMATION OF FIRST AND SECOND AMENDED PLANS
AND GIVING DEBTORS THIRTY (30) DAYS TO FILE A THIRD
AMENDED PLAN**

---

On July 8, 2008, the debtors filed their Chapter 13 petition. The Schedule J they filed on that date showed that, when they subtracted their expenses from their income, the debtors had monthly net income of $1,492.43 available. Their Form B22C Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income, however, showed on Line 59 that the debtors had "Monthly Disposable Income" of *negative* $67.24.

On the same date that the debtors filed their petition, they filed a Chapter 13 plan. This plan proposed to make payments to the trustee of $1,492.00 per month for sixty (60) months. This amount is, within a few cents, the amount that the debtors' Schedule J showed they had available each month as net income. The trustee filed an objection to this plan, citing as grounds for the objection that the plan did not provide sufficient funding to pay the allowed secured and priority claims.

Before the Court could schedule a hearing on the trustee's objection to the original plan, the debtors filed a First Amended plan. One might think that the debtors had filed that amended plan in an attempt to respond to the trustee's objection, and to make certain that the plan provided sufficient funds to pay the allowed secured and priority claims. This might have involved the debtors proposing to make larger trustee payments, or proposing to give up a secured asset, or something of that nature. Instead, however, this amended plan proposed to *reduce* the debtors' trustee payments. They proposed to pay the $1,492-per-month payments only for the first two months of the plan, and then to *reduce* their monthly trustee payments to $1,020 per month. A reduction of this amount in the monthly trustee payments yielded a decrease of some $27,000 in the amount the debtors proposed to pay in over the life of the plan–hardly how one would expect the debtors to remedy the trustee's concern that they couldn't fund their secured and priority debt. And the debtors did not file anything–such as, for example, amended Schedules I and J–indicating that this proposed reduction was the result of changes in their financial circumstances.

Accordingly, the trustee objected to the first amended plan. This time, the trustee based his objection on the fact that the debtors reduced their plan payments by some $400 per month without providing any supporting

documentation or explanation.[1]

At the hearing on the trustee's objection, counsel for the debtors explained why the debtors had proposed to reduce their plan payments. He indicated that, when his office filed the original Chapter 13 plan for the debtors, the office kind of "forgot" that in <u>In re Nance</u>, 371 B.R. 358 (Bankr. S.D.Ill. 2007), Chief Judge Meyers had held that debtors should calculate their "projected disposable income" for the purposes of paying their unsecured creditors by using the "disposable income" calculated on their Form B22C. Accordingly, counsel put together a plan that based the amount of the plan payments on the net income reflected in Schedule J, and not on the Form B22C Monthly Disposable Income amount shown on Line 59. Counsel indicated that since filing the original plan, his office had figured out that they made an error, and the first (and second) amended plans proposed payments based on the Form B22C, per the <u>Nance</u> decision.

The trustee responded that the debtors had not filed the first amended plan in good faith. He argued that the debtors clearly were capable of paying the $1,492 amount proposed in the original plan, because they had done so. Their first plan payment was due in August, and they had paid $1,492 to the

---

[1]Since the filing of the first amended plan, the debtors have filed a second amended plan, but it shows the same reduced monthly plan payments of $1,020. It changes only the monthly distribution to the mortgage creditor for the mortgage arrearage. The trustee objected to this plan as well, on the same ground that formed the basis for his objection to the first amended plan.

trustee that month. Meanwhile, the day after the debtors filed their petition, the Court issued an order to the debtor/husband's employer, ordering the employer to remit $1,492 per month from the debtor/husband's paycheck to the trustee. At the hearing, the trustee argued that the debtor/husband's employer had, in fact, remitted this amount in the second month of the plan. Clearly, the trustee argued, these facts demonstrated that the debtors were capable of making payments of $1,492 per month. Their only reason for amending their plan and reducing their payments, he argued, was the fact that their counsel now had figured out that, had he calculated the plan payments pursuant to <u>Nance</u>, the debtors could have, in a sense, "gotten away" with paying less. Such a reason, the trustee argued, does not constitute good faith.[2] This Court agrees.

The Bankruptcy Code indicates that a court shall confirm a debtor's Chapter 13 plan if, among other things, the debtor proposed the plan "in good faith and not by any means forbidden by law." 11 U.S.C. § 1325(a)(3). A number of bankruptcy courts in the Seventh Circuit have held that the debtors bear the burden of proving that their plan complies with all of the requirements

---

[2] The trustee also argued that at the $1,492-per-month level, the debtors had sufficient funds to pay a dividend to their unsecured creditors, and by reducing those payments to $1,020 per month, they were depriving their unsecured creditors of that dividend. The Court is a bit confused by this assertion, in light of the fact that the trustee objected to the original plan–funded at $1,492 per month–on the ground that it did not provide sufficient funding to pay even the secured and priority debtors.

of § 1325(a), including the good faith requirement. *See, e.g.*, In re Standfield, 152 B.R. 528, 534 (Bankr. N.D.Ill. 1993); In re Ristic, 142 B.R. 856, 859 (Bankr. E.D.Wis. 1992); Matter of Jones, 119 B.R. 996, 998 (Bankr. N.D.Ind. 1990).

The Seventh Circuit has noted that "good faith is a term incapable of precise definition," so that "the good faith inquiry is a fact intensive determination" left to the discretion of the bankruptcy court. In re Love, 957 F.2d 1350, 1355 (7th Circ. 1992). It has directed bankruptcy courts "to look at the totality of circumstances and, thereby, make good faith determinations on a case-by-case basis." Id. (citations omitted). Among the relevant factors courts can consider when asking whether a debtor filed a plan in good faith are the following:

(1) Does the proposed plan state [debtor's] secured and unsecured debts accurately?

(2) Does it state [debtor's] expenses accurately?

(3) Is the percentage of repayment of unsecured claims correct?

(4) If there are or have been deficiencies in the plan, do the inaccuracies amount to an attempt to mislead the bankruptcy court?

(5) Do the proposed payments indicate "a fundamental fairness in dealing with one's creditors," In re Beaver, 2 B.R. 337, 340 (Bankr. S.D.Cal. 1980)?

Matter of Smith, 848 F.2d 813, 817 (7th Cir. 1988) (quoting In re Rimgale, 669 F.2d 426, 432-33 (7th Cir. 1982)).

This list is not exhaustive.  Id.  Indeed, as the bankruptcy court for the Northern District of Indiana has noted, courts have added to it over the years. *See* Matter of Jones, 119 B.R. 996, 1002-3 (Bankr. N.D.Ind. 1990).  The Jones court further observed;

> No list, however exhaustive, can be complete. The variety of factors which might be worthy of consideration is potentially infinite. Ultimately, the court is required to examine all facets of the debtor's conduct, both before and after the petition, in determining whether or not good faith is present. It must do so in light of the structure and general purpose of Chapter 13.
>
> Not all of the factors which have ever been identified will be relevant to every case. In analyzing those factors that may bear upon a debtor's good faith or lack thereof, no one factor is or can be of paramount importance.  No single consideration, standing by itself, necessarily requires a finding of good or bad faith. Instead, it is the cumulative effect of all relevant factors which leads to such a finding. Thus, even the most egregious pre-petition misconduct on the part of the debtor will not prevent a finding of good faith. Conversely, where other factors demonstrate the absence of good faith, even the most herculean efforts on behalf of the debtor to repay creditors will not save it from condemnation.

Id. at 1003 (internal citations and quotations omitted).

The Seventh Circuit cases hold that a court's determination of "bad faith" should rest on something more than just the debtors' ability to pay more to their unsecured creditors.  *See* Smith, 848 F.2d at 820-21.  But a court may–indeed, should–look at whether the debtor's plan constitutes an attempt to "unfairly manipulate[] the Bankruptcy Code." Id. at 820 n.8, quoting Education Assistance Corp. V. Zellner, 827 F.2d 1222, 1227 (8th Cir. 1987).

In the case at bar, the salient facts are straightforward–the debtors have demonstrated that they have the ability to make plan payments of $1,492 per month.  They now propose to make plan payments that amount to some $472 per month less than that–not because their income has decreased, not because their debts have increased, but because at the time they proposed the $1,492 payments, they "forgot" that there was a court decision which, if followed, would allow them to pay less.  This justification flies in the face of the fifth <u>Smith</u> factor–that is, the debtors' proposal to make smaller plan payments than they are capable of making does not indicate a fundamental fairness in dealing with their creditors.  And this is aside from the fact that even at the larger amounts, the trustee expressed a belief that the debtors could not pay all of the secured and priority debt.

For these reasons, the Court agrees that the debtors did not file their first or second amended plans in good faith.  Accordingly, the Court hereby **SUSTAINS** the trustee's objection to the first and second amended plans, and gives the debtors **thirty (30) days** from the date of this order to file a third amended plan that comports with this decision.

ENTERED: February 9, 2009

                                                /s/ Pamela Pepper
                                   UNITED STATES BANKRUPTCY JUDGE